IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs January 14, 2015

**STATE OF TENNESSEE v. ELMI ABDULAHI ABDI**

**Appeal from the Criminal Court for Davidson County**
**No. 2008-B-1061     Cheryl Blackburn, Judge**

**No. M2014-00755-CCA-R3-CD - Filed March 2, 2015**

In this delayed direct appeal, the Defendant, Elmi Abdulahi Abdi, argues that the trial court erred when it admitted a redacted version of his video-recorded statement into evidence. The Defendant contends that the trial court should have introduced the full video-recorded statement to allow the jury to consider his statement in context. The record[1] does not include the un-redacted video statement, a transcript of the audio of the un-redacted video statement, a transcript of a hearing on the Defendant's motion in limine to exclude the redacted statement, or an order from the trial court ruling on the motion in limine. Additionally, the Defendant did not make a contemporaneous objection when the redacted video was played to the jury and did not require the introduction of the un-redacted video pursuant to the rule of completeness, Tennessee Rule of Evidence 106. We conclude that the trial court did not err in admitting the redacted video and affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT L. HOLLOWAY, JR., J., delivered the opinion of the Court, in which THOMAS T. WOODALL, P.J., and ROBERT W. WEDEMEYER, J., joined.

Elaine Heard, Nashville, Tennessee, for the appellant, Elmi Abdulahi Abdi.

Herbert H. Slatery, III, Attorney General and Reporter; Brent C. Cherry, Senior Counsel; Victor S. Johnson, III, District Attorney General; and Rachel Sobrero, Assistant District Attorney General, for the appellee, State of Tennessee.

---

[1] In addition to the record in this delayed appeal, we have reviewed the record from the Defendant's original direct appeal and post-conviction relief appeal.

**OPINION**

## I.  Procedural History

### Pretrial Motions and Jury Trial

The Davidson County Grand Jury indicted the Defendant in Case No. 08-B-1061 for two counts involving separate victims and acts:  Count 1–aggravated robbery of Zino Aboona, a front desk clerk at Crossland Studios, and Count 2–attempted aggravated robbery of Andrea Neal, a front desk clerk at Extended Stay America Hotel.  Both offenses were alleged to have occurred on January 1, 2008.

On February 13, 2009, the trial court for Division I heard a Motion to Sever Count1 and Count 2, in which the Defendant argued for severance of the two counts and the State argued the two offenses were part of a common scheme or plan.  At the beginning of the hearing, the Defendant discussed the need to redact the Defendant's statement, explaining:

> There's a statement that [the Defendant] gave to the Police Department; and on that statement, there's discussion of the two incidents from January first, that the severance is about, and also an incident from December twenty-sixth.
>
> The incident from the twenty-sixth needs to be redacted, regardless; and, depending on the results of [the hearing on the motion to sever], . . . one of the incidents from [January] first needs to be redacted[.]

The State indicated that it would redact the Defendant's statement to remove questions and answers concerning the incidents that were not part of the indictment in Case No. 08-B-1061. The State also stated that, if Count 1 and Count 2 were severed, it could also redact the statement to delete any questions and answers related to the severed count.  At the conclusion of the hearing, the trial court ordered the two counts to be severed.  The Defendant voiced no objection to the State's redacting the video to separate the questions and answers concerning Count 1 and Count 2.

On September 18, 2009, the trial court for Division I ordered the Defendant's case transferred to Division III for a trial on Count 2 beginning September 21, 2009.  Based upon the date stamp by the court clerk, the Defendant filed five motions in limine on September 18, 2009.  However, Motion in Limine No. 6 (Prohibiting State from Playing Portions of Defendant's Statement)" ("Motion in Limine No. 6") shows in the caption that it was filed in Division I and has a handwritten notation that it was filed on September 21, 2009.  In Motion in Limine No. 6, the Defendant argued that allowing the jury to view and hear only

2

portions of the video out of context would "mislead the jury into believing that the [D]efendant is speaking about the crime for which he is presently on trial, when in reality it is impossible to tell which robbery the [D]efendant is speaking about." Consequently, if the State was allowed to play portions of the video statement for the jury, "the only way to defend against those statements is to establish the context in which those statements were made, which would require [trial counsel] to bring in . . . inadmissible propensity evidence." The record does not contain a transcript of a hearing on Motion in Limine No. 6 or an order ruling on the motion.

The Defendant was tried before a jury on September 21-22, 2009. The jury convicted the Defendant of attempted aggravated robbery as charged, and the trial court sentenced the Defendant to ten years' incarceration as a Range II, multiple offender.

**Direct Appeal**

The Defendant filed a direct appeal claiming "(1) the evidence was insufficient to support his conviction; (2) the trial court erred by admitting videotape evidence; and (3) the trial court erred by enhancing the [D]efendant's sentence and ordering him to serve his sentence consecutive to case number 2006."

This Court summarized the relevant facts on direct appeal, as follows:

The victim testified that on January 1, 2008, she was the front desk clerk at the Extended Stay America Hotel located at 2525 Elm Hill Pike, Nashville, Tennessee. On that day, she arrived at work at 7:00 a.m. Before she could remove money from the hotel's safe to put in her register for the day, she heard the door open and went to the front desk. The victim testified that the [D]efendant was standing at the counter, wearing a stocking cap, a gray fleece jacket, and dark sunglasses. She said that he demanded that she give him all of the money. He had his hand in a pocket of his jacket, and she said that "he lifted his hand up towards my head like he had a gun." She told him that she had not taken the money out of the safe yet and showed him the empty register drawer. He demanded that she let him behind the counter and said, "I ought to kill you." The victim testified that after he said that, she began moving to the side door and then turned and ran through the back door. She said that she was afraid that he would shoot her in the back when she turned to run. She went up to the third floor, and knocked on a guest's door. The guests let her in, and they called the police. When the police arrived, she told them what happened. The following day, a detective at the Hermitage Precinct showed her a set of photographs. She identified a photograph of the [D]efendant as the

3

person who tried to rob her. She also identified the [D]efendant in the courtroom.

On cross-examination, the victim denied that the man who tried to rob her was black. She said that she recalled the description that she gave to the police but did not recall telling the police that the man was black.

On re-direct examination, the victim stated that she was "a hundred percent" certain that the [D]efendant was the person who tried to rob her. She said that she would not describe the [D]efendant as a black man.

Metropolitan Nashville Police Officer Geoffrey Thiede testified that he responded to an attempted robbery call at 2525 Elm Hill Pike on January 1, 2008. He spoke with the victim and filled out an incident report. He said that the description he recorded was "a generic description of a male black, approximately twenty-five to thirty years old, 5' 9?, 185 pounds." Officer Thiede noted in his report that the suspect had "his left hand ... in the pocket of the fleece jacket to possibly give [the victim] the inference that maybe he had a weapon in his hand."

On cross-examination, Officer Thiede agreed that the victim described the suspect as a black male. He further agreed that he indicated in his report that there was no weapon involved. He recalled that the victim told him that the hotel had video surveillance but that she did not have access to it. He did not know whether detectives followed up on the video surveillance.

Metropolitan Nashville Police Detective James Chastain testified that he prepared a photographic lineup including the [D]efendant's photograph.

Metropolitan Nashville Police Detective Jeff Ball testified that he was the lead detective in this case. He spoke with the victim on January 2, 2008, and showed her a photographic lineup. She identified the [D]efendant as the person who tried to rob her. He learned that the hotel had video surveillance, and the police collected a videotape from the hotel. Detective Ball testified that the Tech Support Unit viewed the videotape, but the attempted robbery was not captured on the videotape. He said that the police received an anonymous call that the [D]efendant was at the Breckinridge Apartments on Plus Park Boulevard. The police arrested the defendant in that area. Detective Ball spoke to the [D]efendant at the Hermitage Precinct. The [D]efendant signed a rights waiver. He told the detective that he did not take any money

4

and that it was his hand in his pocket. The [D]efendant said he might have attempted it and that he was drunk. He explained that he lost his memory when he was drunk. Detective Ball said that he had a surveillance video from a business three to four miles away from the hotel that captured the [D]efendant at 9:08 a.m., according to the time on the videotape. The detective said that, based on his investigation, the clock on the videotape was one hour off. The [D]efendant identified himself in the video. The detective testified that the clothing worn by the [D]efendant in the video matched the description given by the victim.

On cross-examination, Detective Ball agreed that the [D]efendant never specifically said that he attempted to rob anyone at the hotel.

The state recalled the victim, who testified that the [D]efendant did not smell of alcohol, speech was not slurred like a drunk person, nor did he walk abnormally.

State v. Elmi Abdulahi Abdi, No. M2010-00277-CCA-R3-CD, 2011 WL 2570404, at *1-2 (Tenn. Crim. App. June 29, 2011), perm. to app. denied (Tenn. Oct. 18, 2011).

In affirming the convictions, this Court concluded that the evidence was sufficient to support the conviction, that the trial court did not err in ordering consecutive sentences, and that the evidentiary issue was waived because the motion for new trial was not filed within thirty days of the sentencing order. Id., at *1.

## Post-Conviction Relief Appeal

Subsequently, the Defendant filed a petition for post-conviction relief, alleging ineffective assistance of counsel. Following a hearing, the post-conviction court denied relief, and the Defendant appealed. On appeal, this Court stated,

The record shows that Trial Counsel submitted a motion in limine to prohibit the State from playing the interview video at trial and that it was denied by the trial court. However, the record does not contain a transcript of the hearing on this motion.

Elmi Abdulahi Abdi v. State, No. M2012-02688-CCA-R3-PC, 2013 WL 6081461, at *1 (Tenn. Crim. App. Nov. 18, 2013). However, this Court found that trial counsel's failure to file a timely motion for new trial constituted deficient performance and the Defendant was presumptively prejudiced. Id. at *9. Therefore, the post-conviction court's judgment was

5

reversed in part, and the case was remanded to allow the Defendant to file a new motion for a new trial and delayed appeal.  Id. at *10.

## New Motion for New Trial

Thereafter, the Defendant filed a new motion for a new trial arguing, among other things, that the trial court erred by allowing only portions of the Defendant's statement into evidence.  At the hearing on the motion for new trial, the Defendant stated, "It was our – the [D]efendant's objection that it be played in clips and he would have preferred that the interview be played in its entirety."  The trial court noted that it allowed portions of the video statement to be played to protect the Defendant from prejudice that may have resulted from the jury hearing questions and answers concerning other robberies.  Consequently, the trial court found no error and denied the Defendant's motion for a new trial.  This timely appeal followed.

## Delayed Appeal

The Defendant raises one issue on appeal:  "Whether the Trial Court Erred in Allowing the Video Clips of the Appellant's Statement to Law Enforcement Officers into Evidence Instead of the Appellant's Full Recorded Statement."  The Defendant designated as part of the record in this appeal the transcript of the Defendant's post-conviction evidentiary hearing held on November 15, 2012, and the transcript of the Defendant's jury trial dated September 21-22, 2009.  To assist in the resolution of this delayed appeal, we take judicial notice of the appellate record from the Defendant's direct appeal and post-conviction appeal.

The transcript of the jury trial that was filed as part of the appellate record begins with the State calling its first witness and does not contain any information regarding the Defendant's Motion in Limine No. 6.  During the direct examination of Detective Jeff Ball, "clips" of the Defendant's redacted interrogation video were played to the jury.  The transcript is divided into five "clips."  Clip 1 was an explanation and waiver of rights.  In clip 2, the Defendant states, "I didn't take nothing, I swear man, believe me, I didn't take no money, I swear."  In clip 3, the Defendant states, "I will tell you right now I walked to the store, I was drunk.  Put my hand, and walked back.  Tried to attempt it [.] Attempted, I'll take."  In clip 4, the Defendant states, "What I'm just saying, I, I walk in.  I did.  Maybe I attempted.  I walk in, take no money.  It [sic] possible.  You know, I was drunk, that-."  Finally in clip 5, the Defendant states, "The guy on–let me tell you something.  I'm Somalian.  Be honest with you man.  The guy that looked like me, that's me."  There was no contemporaneous objection voiced by the Defendant at the time the "clips" were played. The Defendant did not seek to play the entire video for the jury or make an offer of proof of the entire video.  The "clips" and a transcript of the clips were entered as exhibits.  The trial

6

court instructed the jury that the Defendant's statement had been edited to delete portions that were "irrelevant or immaterial."

## II. Analysis

On appeal, the Defendant argues that the trial court erred when it admitted only portions of his video statement because it is unclear which offense the Defendant is speaking of in the "clips" admitted into evidence. The Defendant contends that the trial court should have admitted the full videotaped interview.

The Defendant is the party who successfully moved to sever Count 1 and Count 2. The severance necessitated a redaction of the video statement to avoid statements by the Defendant related to other bad acts or crimes from being presented to the jury. Although the Defendant later filed Motion in Limine No. 6, in which he sought to exclude the playing both the video clips and the entire video to the jury, the record in this appeal and the two prior appeals does not contain a transcript of a hearing on Motion in Limine No. 6, a trial court order ruling on the motion, a copy of the un-redacted video recording, or transcript of the audio portion of the un-redacted video. As such, this Court cannot determine if the motion was actually argued by the Defendant or ruled on by the trial court. Nevertheless, this Court can determine from the trial transcript that, when the redacted video was introduced by the State and played to the jury, there was no contemporaneous objection made by the Defendant, there was no offer of proof of the un-redacted video, and there was no motion by the Defendant pursuant to Tennessee Rule of Evidence 106 to require the un-redacted video to played to the jury.

Tennessee Rule of Evidence 106, sometimes referred to as the rule of completeness, provides:

> When a writing or recorded statement or part thereof is introduced by a party, an adverse party may require the introduction at that time of any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it.

Tenn. R. Evid. 106. In this case, the Defendant failed to "require" the introduction of the un-redacted video under Rule 106. If we had the un-redacted video, we could compare it to the clips played to the jury. As our supreme court pointed out in reviewing a video preceding a driving under the influence stop, appellate courts are "[e]qually as capable as the trial court in reviewing evidence[.]" State v. Binette, 33 S.W.3d 215, 219 (Tenn. 2000). However, because the record does not contain the information necessary for this Court to compare the un-redacted video to the redacted video, the only issue we can decide is whether the trial

court erred in admitting the redacted video clips and not whether the trial court should have admitted the entire un-redacted statement.

As a general rule, this Court reviews evidentiary rulings by a trial court under an abuse of discretion standard. State v. DuBose, 953 S.W.2d 649, 652 (Tenn.1997); State v. Rimmer, 250 S.W.3d 12, 23 (Tenn. 2008). An abuse of discretion occurs when a trial court applies an incorrect legal standard or reaches a conclusion that is "illogical or unreasonable and causes an injustice to the party complaining." State v. Ruiz, 204 S.W.3d 772, 778 (Tenn. 2006).

We conclude that the trial court did not abuse its discretion in admitting into evidence the redacted video clips. At the hearing on the Defendant's new motion for new trial, the trial court addressed its reasoning for admitting only clips of the Defendant's statement at trial. The court explained that it allowed only portions of the videotaped statement to be played to protect the Defendant from prejudice that may have resulted from the jury hearing questions and answers concerning other robberies. Clearly, in reaching its decision, the trial court weighed the danger of admitting the entire video and determined that, in order to protect the Defendant, all questions and answers related to other robberies should be redacted. There is no additional information in the record from which this Court can conclude that the trial court abused its discretion. The Defendant is not entitled to relief.

### III.  Conclusion

For the aforementioned reasons, we affirm the judgment of the trial court.

_____
ROBERT L. HOLLOWAY, JR., JUDGE

8